and others, No. 142587. We'll hear first from Mr. Vang. Good morning, Your Honor, and may I please the court and counsel. Your Honor, this case involves a summary judgment. The defendant filed a summary judgment, and the plaintiff, the appellant, also filed a summary judgment, and the district court denied the plaintiff's motion for summary judgment and granted the defendant's motion. This case can be simple to understand. If we apply the laws equally in the same manner on both the government employer and the government civil service employee in this case, Mr. Xiong was terminated because there was some allegation of work rules violation. He respectfully and in honorable manner admitted to those allegations. So those are the rules that he admitted that he violated. However, the Dane County has a civil service ordinance specifically authorizing certain person to hire, discipline, or terminate an employee. And that civil service ordinance specifically names certain appointing authority. In this case would be the head of the Department of the Dane County Human Service, and her name is Lynn Green, the authority to make such termination. And in this case, it is very clear and it is not argued that Jennifer Fisher does not and is not the appointing authority. However, the defendants argue that she is only acting on behalf of the appointing authority. And under the facts, it is wrong because she never consult with the appointing authority. She consult with the two supervisors above her, but not the head of the department. The only thing she did was when she made a decision to terminate Mr. Xiong, she CC a copy of her termination letter to Lynn Green. And the facts of this case is very clear. There is no words from the head of the department, either she approved or not approved. And therefore, the law under the civil service ordinance of the Dane County is pretty clear. It does not allow the appointing authority to delegate that responsibility to her lower employee. Did you raise that issue in the Step 3 grievance hearing after the termination? I did not because Mr. Xiong was represented by the union then, and the union did not have a lawyer then, so the union did not know the issue of the appointing authority. It was raised only when Mr. Xiong retained me, and I went through all those laws with the county and checking with the union grievance procedure, and that's when I found out. So we believe that Fisher did not have the appointing authority because Lynn Green is Dane County Civil Service Ordinance when terminating Mr. Xiong. The second issue is also particularly what, Your Honor, you just mentioned, the union grievance procedure. The union procedure is a post-deprivation hearing, which allows Mr. Xiong to contest the termination on the Step 1 with the immediate supervisor and the Step 2 with the head of the department. If those two steps were taken, at least we would not argue that yes, the Step 2, the head of the department, which under the grievance would require her to provide a written response, and that written response would either approve or disapprove Jennifer Fisher's action. And again, if that Step 2 written response would say yes, I agree with my lower-level supervisor's action, our issue of the appointing authority would not have a merit. And the Step 1 and Step 2 procedures are very important because, as we argue, the step, the pre-deprivation hearing, which happened on May 24, Mr. Xiong asked to see if he can explain why he did what he did. And they said, no, you cannot explain. You just answer yes, you did, or yes, you did not, or no, you did not. So after the termination, I think the procedures allow Mr. Xiong the opportunity to explain, yes, I am now terminate, can I explain, and can you change? And the Step 1 requires that the immediate supervisor must or shall attempt to make a mutual satisfactory adjustment. That doesn't mean that she must withdraw her termination letter, but she must attempt, so there's no attempt. And again, the Step 2 is the same. At least the head of the department would have the action to approve or not approve, and we don't have that, so they go directly to Step 3. And the Step 1 and Step 2, in my opinion, those are the fact-gathering process, which require both of those to be in written. Could you address the defense argument that, in essence, the union has the discretion to decide that Steps 1 and 2 would be a waste of time because we've already had the pre-termination hearing with the immediate supervisor and that the most reasonable understanding of this record is that it's very clear Green approved this termination, so without wasting further time, let's go directly to Green's boss in Step 3. There's no requirement that they waste time going through every step if there's no point in it. Well, that's the problem, Your Honor. We don't know if there was a point or not a point because the Step 1 and the Step 2 are within the department itself, and those are the very crucial steps. The Step 3 is with a different department, with the Dane County executive. He is acting as a reviewer, not adjusting to the decision. So as a reviewing, the same as you are doing here, Your Honor. You are reviewing the district court's decision, so it's not the same. You must have the fact findings on the lower level in order to go to the next, and there is no cause for the unions to proceed to the Step 1 and 2. As a matter of fact, the counties say that we did not object to it because the union never asked, and then the unions say in theory or in fact, yes, we did ask, but they say under the circumstance, you know, just go to the Step 3. But it is very clear in the union grievance, we use the word shall. Shall means they must at least try. But doesn't the collective bargaining agreement allow for the grievance to be started at Step 2? Yes, it allows it to be started at Step 2. So at least if Step 2 would be taken, again, as I mentioned earlier, then we would not argue on the appointing authority issue because there was no Step 2. And Step 3, if you read the grievance procedure correctly, Step 3 review Step 2 written decision because there is no written decision on Step 1 and Step 2, then Step 3 has nothing to review. The other issue that I'd like to point out, Your Honor, is Mr. Song was also terminated for failing his test with the state. It's called a functional screen test, and that was not something that was provided to him at the pre-deprivation hearing. Nothing. But on the termination letter, it became a big issue at the Step 3 level. It also became a big issue, and the district court decision also made that as a big issue. But that was never brought up. But didn't you raise this issue for the first time in the reply brief on summary judgment? Well, I raised that because it was part of the district court's decision that even if the other work rules violations were not enough, that alone should be enough to terminate Mr. Song. So that became part of the district court's ruling. Isn't that correct? I mean, how could he have continued given the state's change in its rules? We don't know, Your Honor, because we don't have any record of his job description, what is required of him to do. Is there any doubt that he's required to pass that test? When he was hired over 20 years ago, that was not part of the requirements. Right, but the state changed the law, right? They changed the requirements. Yes. And he couldn't meet the new requirements. So you're challenging the procedures, but what would be the point of a hearing on that question, if it's clear that he flunked the test and he was required to pass it? The head of the department, Lynn Green, did write a letter to the state contesting their testing procedures. So from that, I understand that there may be some other opportunity, maybe not at that same year, but later on for Mr. Hsiong to retake the test again. So there are many other positions in the Dane County Human Services Department as a social worker that they could allow Mr. Hsiong to do until he can pass the test again. Okay. Your rebuttal time. Thank you. You can do it if you want, but if you want to save a little, here's the time. Yes, I'd like to save, Your Honor. Thank you. Okay. Thank you. Ms. Sullivan? For the county defendants? I am representing the county defendants, correct. Thank you, and may it please the Court. The first issue that Mr. Hsiong raises, well, first of all, he completely admits that he was guilty of the very serious work violations that the county accused him of. He even says in his brief, page 23, this case is not about whether Hsiong was terminated with just cause. So just cause is not an issue in this case. This case is solely about the procedure used to terminate him and whether that was sufficient to protect his constitutional rights. His first complaint is with the fact that his immediate supervisor, Jennifer Fisher, signed the termination letter. We all agree that it is Lynn Green who has the authority under Dane County Civil Service Ordinance to terminate employees. However, it is also clear from the record that Ms. Green was well aware of everything that was being ---- How clear is that? Well, she was, first of all, she was personally involved in approaching the state about having Mr. Hsiong's, having some sort of remediation. That's a different issue. Okay. Well, she was copied on the May 22nd letter. I don't necessarily read everything that is cc'd to me, so is there anything better? Well, there's the May 22nd letter. There's the June 1st letter informing him that he was terminated. The best evidence is probably the employee action form, which was signed by her designee. It was not her, but the person authorized to sign on her behalf. Who signed that? I do not know the name of the person. The name is not legible, but it's signed in the box for her designee. You don't know who it is? That didn't come into the record. It wasn't, it was not challenged that it was her designee. Let me ask, this issue was raised in the district court, right? Correct. Why is there no affidavit from Green just saying, yeah, of course I was aware of this and I approved? That would eliminate any issue, right? Well, what should also eliminate any issue is that, in fact, at the Step 3 proceeding, Ms. Green's supervisor reviewed the procedures. He found nothing wrong with the procedures. And, in fact, he also approved the termination. So it was approved even above her. That doesn't actually answer my question. Well, I agree it would have been better to have an affidavit from Green. She's the authority. Her boss reviews the decisions she makes. Well, we have the evidence in the record that she was kept informed of each step. Jennifer Fisher, who signed the termination letter, testified that she spoke to two levels of supervision above her. She spoke to employee relations. She didn't say she talked to Green. She didn't talk to Green. She did not say that she talked to Lynn Green. Did her supervisors testify they talked to Green? There was a union representative went to Fran Genter, who was the person directly under Lynn Green, and asked if something could be done about the termination, and he said that decision was made far above me. So he essentially is implying, again, that Ms. Green was aware and approved of the decision to terminate Mr. Zhang. In any event, Mr. Zhang did have the opportunity, during the post-termination procedure, if he wanted to contest that he could have done it, he could have raised it at the Step 3 proceeding. Was he required to raise a violation of the civil service ordinance at the Step 3 level? Well, if he really thinks something is serious, as the right person didn't authorize the firing, then I think, yeah, he was required. A legal basis for that? Sorry? A legal basis for that argument? Well, the district court found that it was a waiver of the argument, because he didn't raise it, and it was something that could have easily been resolved. Also, Mr. Mirren, who conducted the Step 3 proceeding, was well aware of all the procedures that were used.  None of them felt that there was anything worth raising at that level. Is there a private right of action under the civil service ordinance? Yes. He had the option to proceed under the collective bargaining agreement or the civil service ordinance, and he elected to proceed with the union. Okay. So the question here really is whether Mr. Zhang received his due process. Under the case of Cleveland Board of Education v. Laudermill, which is the standard that both sides have pointed to, the requirements for due process are minimal when you have a pre-termination and a post-termination proceeding. That pre-termination proceeding isn't required to be elaborate. It simply requires giving the employee a notice and an opportunity to respond. But isn't there at least a question of fact as to whether Fisher's decision was either authorized by Green or that Green delegated her decision-making authority to Fisher? And if so, shouldn't that go to the jury? No, there isn't a question of fact because, first of all, the district court didn't find a question of fact. But we have the official signature on the employee action form, which is the document that terminates the employment, and there is no question that Lynn Green's designee is the one that signed it. So her designee signed the termination. So there's nothing to debate about that, and I don't understand them. Except to wonder who it was. Correct. But in this case, so the Laudermill standard is that an employee who is going to get some kind of a hearing, he has to be able to present his version of the story, his side of the story. The employer has to say why they're terminating him. He has to be able to respond. And in this case, Mr. Jung undoubtedly did get that hearing. He was accompanied by his two union representatives. He was notified orally the day before the hearing that there was going to be this pre-disciplinary meeting. Laudermill specifically says oral notice is adequate. He received written notice several hours before the hearing, had a chance to discuss with his representatives beforehand. I do need to contest something that Mr. Fang said before. He said that Mr. Jung was not given the opportunity to present his side of the Pre-disciplinary meeting. That, in fact, is not correct. Jennifer Fisher, in her June 1st termination letter, specifically outlined not just the accusations against him, but also the responses that he gave. So it is obvious that she did hear what he said and took that into consideration. Thank you, Ms. Sullivan. Mr. Halstead for the union. May it please the Court, I'm Aaron Halstead. I represent AFSCME Local 2634, the union defendant in this case. And in my time, what I'd like to address are two questions. First, the plaintiff's assertion that the union breached his duty of fair representation to him after he was given notice of a pre-disciplinary meeting and then after he was terminated. And then briefly, if I still have time, to talk about the Section 1983 claim alleged against the union. The district court's grant to summary judgment in this case is based not just on clear evidence, it's based on unrebutted evidence. This court will note that in large part, the district court granted summary judgment against the plaintiff, Mr. Xiong, because he failed to respond to not just probably in excess of 100 proposed findings of fact that the union offered in support of its motion for summary judgment. Those unrebutted facts show that the union attended multiple pre-disciplinary meetings with not only Mr. Xiong, but with the county, meeting with the two county representatives at the meeting after the union and Mr. Xiong had received the notice of his infractions. But then later at a third-step meeting, third-step hearing under the grievance process with Travis Myron, who is the county's director of administration. He, in fact, would be the superior of the department head, Ms. Green. Finally, the union made multiple efforts when it became clear that the county was not going to back down on its decision to terminate Mr. Xiong, attempting to negotiate a settlement for him that would permit him to resign rather than being terminated and to save him also some health insurance benefits. In this case, Mr. Xiong was asked in his deposition, what is it that he felt that the union had done to wrong him? At page 48 of his deposition, he was asked to explain what did the union do that was wrong or what did it fail to do that it should have done. He said, I've been a public employee for over 20 years with the county and with the union. I feel the union should have done more than what they have done for me. The union could have represented me better than what it did. I appreciate what they did, but I feel they should have gone farther. He was asked whether he had any evidence that what the union did was out of any discriminatory motive. He said not that he knew of. He was further asked, do you believe anything that they did or didn't do was because they didn't like you? And he said, no, I believe not. I believe that they didn't do that. And he was asked, do you believe that they did their best to help you? And he said, when they were helping me, they did. Do you just disagree with their decision not to arbitrate? And he said, correct, yes. Here, his testimony in the unrebutted record shows that there was no discrimination involved and no bad faith on the union's part. And under the duty of fair representation, that leaves only the question whether the union acted arbitrarily. In such a case, the burden of proof lies with the employee who is alleging a breach of the duty of fair representation. This court and the U.S. Supreme Court have held that unions hold broad discretion in deciding what cases to arbitrate and what cases not to arbitrate. Mr. Hanstead, could I ask you, this may be a legal metaphysics question, but actually my question is what law controls this question? Because as I understand it, your brief relies entirely on federal labor law with respect to the duty of fair representation, which is very well developed. As I understand it, it's virtually all case law. Federal labor law doesn't really apply here, right? This is all state labor law. It is true that we relied heavily on federal labor law precedent in the duty of fair representation context, and that's because federal labor law is much more well developed. But there are cases in Wisconsin also. What do they tell us? They say almost identically the same. Those aren't in our brief, but, for example, Gray. That would actually be helpful, right? That's the controlling law. I believe it is the controlling law. Judge, Gray v. Marinette County is a case that this court could look to in which the Wisconsin Supreme Court said almost identically what the Seventh Circuit has said and the U.S. Supreme Court. We're essentially adopting Vaca v. Sipes in all of the United States Supreme Court decisions. One of the reasons that there is not an abundance of even Wisconsin appellate authority in this sphere is that often these cases are brought before the Wisconsin Employment Relations Commission, which is an administrative agency. And so in Wisconsin practice, we rely heavily on federal precedent in these areas. Okay. One of this court's cases, and, again, I'm confident that this court would find if it looked, for example, to Gray v. Marinette County, and that's a case in which a grievant argued that the union had breached its duty of fair representation by not bringing a grievance to arbitration. And the court in Wisconsin said unions have broad discretion to make decisions in these circumstances. That happened to be a case in which there were members of the union who wanted a grievance filed and others who didn't. And the court said, you know, we're not supervising what the unions do in these areas. Again, the three prongs are was there discrimination, was there any bad faith, and, finally, was there arbitrary conduct? In this case, in the Garcia case, 58 F. 3, 1171, this court said, the thoroughness of the union's investigation in the case depends on the particular case, and only an egregious disregard for union members' rights constitute a breach of the union's duty. It's a very deferential standard in terms of the type of representation given, but in this case, I would submit, even under a less exacting standard, the union did everything that it could and should have done. Now, Kate Gravel, who was the union representative, testified that it was past practice under this contract, in the proper case, to move above the first or second steps, depending on who had made the decision at the lower steps. If the union believed in administering the contract, that it would have been futile to go to a particular person within the union to speak on the latter, and that's what the union did in this case. I see I'm out of time. I would only note that the district court did very clearly articulate that there was nothing to show that, were this case had started at step one or two, that would have affected the process in any way, because, in fact, Ms. Green's supervisor, Travis Myron, the director of administration, ultimately made the decision. Thank you. Thank you, counsel. Mr. Vang, rebuttal? Thank you. On the action form that the county mentioned earlier, that is not an admissible evidence at this time, because it was not introduced by any witness through any deposition or affidavit, so the district court should not allow that in. But even if that would be allowed in, that is an action by the employee relations, and that form, again, is very ambiguous as to who signed it. That form was signed after he was already terminated on June 1st. So it was for the employee relations to decide what benefit, severance benefit or that should be given to him. So it has nothing to do with the decision to terminate. Also, to address the argument that the union presented that Mr. Hsiong did not make any opposition to the proposed facts, Mr. Hsiong did. He did. He agreed to the general facts as in the plaintiff's proposed facts. He agrees to the general facts and then provide his own facts that he disputes. So, again, and Mr. Hsiong is a respectful and honorable person. He respected unions representing him throughout the process. But, again, after he retained counsel, counsel realized that that representation was arbitrary and unfair, because, again, step one and step two were not taken. The union argued that the president said that it's a past practice, but there is no written past practice. There is no how many cases in the past there was past practice. Even if that would be the past practice, that is the wrong practice to ignore its own rules in detrimental to its employee. So that should not be enforced. And thank you. All right. Thank you very much, Mr. Vang. Thanks to all counsel. The case will be taken under advised.